USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/9/07

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
PAUL J. HANLY, JR., THE ANDY WARHOL
FOUNDATION FOR THE VISUAL ARTS, INC.,

                  Plaintiffs,

     -against-                              05 CV 5089 (KMW)
                                            MEMORANDUM OPINION
POWELL GOLDSTEIN, LLP, JAMES C. RAWLS,            AND ORDER

                  Defendants.
--------------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

    Plaintiffs Paul J. Hanly, Jr. ("Hanly") and the Andy Warhol Foundation for the Visual Arts, Inc. (the "Foundation") bring this diversity action against Powell Goldstein, LLP ("PoGo") and James C. Rawls ("Rawls") for injuries stemming from a series of activities, including a copyright infringement suit brought in New York in the 1990s (the "New York Suit"), a French criminal copyright infringement case (the "French Copyright Case"), and a French criminal investigation of Plaintiffs for possible fraud in the initial New York Suit (the "French Criminal Investigation"). The basis of Plaintiffs' claims is a letter that Rawls sent to a French attorney in October 2000, stating that he believed Plaintiffs had perpetrated a fraud upon Rawls's clients during the New York Suit. Plaintiffs, who allege defamation, malicious prosecution, and intentional infliction of emotional distress ("IIED"), seek compensatory damages of $5 million and punitive damages of $20 million. Defendants have filed a motion to dismiss, arguing that: (1) this Court lacks personal jurisdiction

over defendants; (2) venue is improper; (3) Plaintiffs' defamation claim is time-barred; (4) Plaintiffs have failed to state a cause of action for malicious prosecution; and (5) Plaintiffs' IIED claim is time-barred, duplicates the defamation claim, and fails to state a claim.  For the reasons set forth below, the Court grants Defendants' Motion to Dismiss.

I.   Background[1]

The claims in Plaintiffs' current lawsuit stem from both parties' participation in the New York Suit, which began in 1990. PoGo's clients, Schlaifer Nance & Co., Inc. ("SNC"), instigated the New York Suit by suing Andy Warhol's Estate (the "Estate") on the grounds that the Estate had perpetrated a fraud upon SNC, breached its contractual obligations, and violated RICO.  Am. Comp. 4, ¶ 11.  SNC claimed that the Estate, prior to entering a license agreement with SNC, made false representations about the scope of its copyrights with respect to Warhol's works.

In 1995, a jury awarded SNC more than $3 million in damages. The trial court, however, concluded that even if the Estate had misrepresented that it held copyrights to all of Warhol's works, SNC could not have reasonably relied on such misrepresentations because it knew the Estate held no such rights.  The court

---

[1] The facts as set forth in this opinion have been taken from the Amended Complaint and are assumed to be true in accordance with the legal standard of review on a motion to dismiss.  See Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999); cert. denied, 528 U.S. 1188 (2000).

therefore vacated the jury award and entered judgment as a matter of law. Am. Comp. 4, ¶ 13. The Second Circuit affirmed the trial court's decision. Am. Comp. 5, ¶ 14. The trial court then granted $400,000 in sanctions against SNC and its trial counsel. The Second Circuit later reversed the trial court's decision granting sanctions. Am. Comp. 5, ¶ 15.

In the meantime, the Foundation (which, by the early 1990s held the copyrights that the Estate had held immediately after Warhol's death) learned of the activities ultimately leading to the French Copyright Case. Upon learning that a French firm was manufacturing items bearing reproductions of Warhol's artwork without its permission, the Foundation (via Hanly) retained French counsel, who investigated the matter and brought it to the attention of French authorities. Hanly, as part of the French Copyright Case, submitted an affidavit to the French Court stating that: (1) the Foundation owned whatever copyrights Warhol owned at his death; (2) under New York law, the Foundation had legal authority to sue and otherwise pursue legal rights; and (3) the French Defendants' copyright argument did not apply to the four specific works in this case. Am. Comp. 8, ¶ 25. Rawls then sent the allegedly defamatory letter to the attorney representing the defendants in the French Copyright Case.

In March or April 2001, the French Defendants each submitted a complaint to French authorities, alleging that Hanly and the

Foundation had violated French criminal laws against making misleading statements and false swearing to a tribunal. The complaints are based upon Rawls's letter and include references to an affidavit sworn by Rawls's former co-counsel, who transmitted the affidavit and other documents from New York to the attorney representing the French Defendants. Am. Comp. 10, ¶ 28. A French magistrate investigated the matter and, in November 2004, informed Hanly that he was the subject of a criminal proceeding in France and that he was to appear in France in early 2005 to answer the charges. After Hanly appeared as directed, the French court formally dismissed the proceeding against Hanly, on May 13, 2005. Am. Comp. 11, ¶¶ 30-31. Hanly then filed this lawsuit, which Defendants have moved to dismiss.

**II.  Legal Standards on a Motion to Dismiss**

The role of a district court in considering a motion to dismiss under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure is "not to weigh the evidence that might be presented at a trial but merely to determine whether the Complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d. Cir. 1985). The Court must accept as true the factual allegations made in the Complaint, and draw all inferences in favor of the plaintiff. Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999), cert. denied, 528 U.S. 1188 (2000); Moore v. PaineWebber, Inc., 189 F.3d 165

4

(2d Cir. 1999). The Complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Cruz v. Gomez</u>, 202 F.3d 593, 597 (2d Cir. 2000) (<u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

### III. Discussion

Defendants' motion to dismiss raises four issues: (1) may the Court exercise personal jurisdiction over Defendants; (2) does New York's statute of limitations bar Plaintiffs' defamation claim; (3) have Plaintiffs stated a claim for malicious prosecution; and (4) have Plaintiffs stated a claim for IIED? The Court considers each issue in turn.

### A.   **Defendants' contacts with New York support personal jurisdiction**

Defendants contend that Plaintiffs have failed to allege a basis upon which the Court may exercise personal jurisdiction over them in New York. Because, however, Defendants transacted business in New York and Plaintiffs' claims arise from that transaction, the Court may exercise personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a)(1). Defendants' alleged acts of malicious prosecution and IIED provide additional bases of personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3).

Under Federal Rule of Civil Procedure 12(b)(2), Plaintiffs bear the burden of showing that the Court has personal jurisdiction over Defendants. <u>In re Magnetic Audiotape Antitrust</u>

5

Litigation, 334 F.3d 204, 206 (2d Cir. 2003) (citing Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." Id. Because the Court's subject matter jurisdiction rests on diversity of citizenship,[2] New York's long-arm statute governs the personal jurisdiction analysis. N.Y. C.P.L.R. § 302; DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001).

New York's long-arm statute provides jurisdiction over Defendants who "transact[] any business within the state" and whose claims arise from those business transactions. N.Y. C.P.L.R. § 302(a)(1); Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004). "To determine whether a party has

---

[2] "A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State." Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 388 (1998). A partnership, for the purposes of assessing a diversity claim, "has the citizenship of each of its partners." Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2001) (citing Carden v. Arkoma Assoc., 494 U.S. 185, 192-95 (1990)). Here, "Hanly is a citizen of New York who resides in this judicial district," the Foundation "is a not-for-profit corporation organized and existing under the laws of the State of New York with its principal place of business in this judicial district," PoGo "is a law firm organized as a limited liability partnership under the laws of the State of Georgia with offices in Atlanta, Georgia; Dallas, Texas; and Washington, D.C.," "no partner of PoGo resides in, or is a citizen of the State of New York," and Rawls "is a resident and citizen of the State of Georgia." Am. Comp. 3, ¶¶ 7-10. Given these facts, the Court is satisfied that there is diversity of citizenship.

'transacted business' in New York, courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state." Id. A party "transacts" business in New York if it "purposely avail[s] [itself] of the privilege of conducting activities within New York and thereby invoke[s] the benefits and protections of its laws." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 104-05 (2d Cir. 2006) (citations and internal quotations omitted). A claim "arises from" a particular transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon." McGowan, 419 N.E.2d at 323.

Because the dispute in this case is wholly based upon the New York Suit, the New York Suit supplies the requisite nexus. Id. The Rawls letter, the alleged cause of Plaintiffs' injuries, complains of Hanly's conduct prior to and during the New York Suit. The letter therefore makes it clear that the core of the dispute between the parties is the New York Suit itself.[3] It is this relationship that supplies the requisite nexus and

---

[3] Defendants argue that the New York Suit cannot supply the requisite nexus because more than two years passed between PoGo's representation of SNC in the New York Suit and Rawls's letter. A lapse of time, however, is not dispositive where there is a nexus between the Plaintiffs' cause of action and the business transacted in the state. The authority that Defendants cite in support of this proposition is inapposite. Talbot v. Johnson Newspaper Corp., 522 N.E.2d 1027 (N.Y. 1988) (holding that plaintiffs could not show the required nexus between Defendants' New York business and the cause of action).

accordingly supplies the basis for personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1).[4]

New York's long-arm statute also provides jurisdiction over Defendants who commit a tortious act outside New York that causes injury to persons or property within New York if Defendants "expect[] or should reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii); McGowan v. Smith, 419 N.E.2d 321, 323-24 (N.Y. 1981).[5]

---

[4] Defendants are correct that New York courts have "consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of a defendant's communication from another locale," Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 766 (2d Cir. 1983); Carlson v. Cuevas, 932 F. Supp. 76, 78 (S.D.N.Y. 1996). They erroneously assume, however, that the Rawls letter constitutes the only of personal jurisdiction. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1110 n.3 (2d Cir. 1997) (noting that the quantity and degree of the contacts are relevant). With this assumption, Defendants attempt to isolate the Rawls letter from its context and minimize the significance of the New York Suit.

[5] Although Defendants are correct that N.Y. C.P.L.R. § 302(a)(3) explicitly exempts defamation actions from its reach and that New York case law holds that parties may not "repackage" their defamation claims as a different tort, see Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 157 (2d Cir. 1996); Jolivet v. Crocker, 859 F. Supp. 62, 65 (E.D.N.Y. 1994), they are incorrect that Plaintiffs' malicious prosecution and IIED claims are duplicative of the defamation claim. Defendants' contention is that because both the malicious prosecution claim and the IIED claim are rooted in the sending of the Rawls letter, they are in fact defamation claims. The Court disagrees. Although the Rawls letter is aleged to have inflicted all the injuries claimed by Plaintiffs, the malicious prosecution and IIED claims are premised upon injuries distinct from the defamation claim. Plaintiffs' malicious prosecution contention is that Defendants provoked the French Criminal Investigation by sending a letter to a third-party, which

Under N.Y. C.P.L.R. § 302(a)(3), the Court will consider whether Plaintiff has made a sufficient showing that Defendants expected, or reasonably should have expected, the act to have consequences in New York and whether Defendants derive substantial revenue from interstate or international commerce. Hanly resides in New York and is an attorney licensed in New York; the Foundation is licensed and subject to regulation in New York. It is thus foreseeable that statements alleging that Plaintiffs engaged in criminal activity would have an effect in New York, where Hanly lives and practices law and the Foundation is subject to oversight. Given that PoGo is a national and international law firm, it is reasonable to conclude that PoGo derives substantial revenue from interstate or international commerce.

Given that Defendants' contacts with New York during the New York Suit were substantial, and that it was reasonably foreseeable that Defendants' activities would have an impact upon Plaintiffs in New York, exercising personal jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. <u>Intl'l Shoe Co. v. Washington</u>, 326 U.S.

---

suggested that Hanly had engaged in wrongdoing. That third-party then alerted French authorities. Plaintiffs' IIED contention is that the provocation of the French Criminal Investigation caused Hanly mental anxiety rising to the level required to assert a successful IIED claim. Because Plaintiffs' malicious prosecution and IIED theories are separate from the defamation claim, they are not barred under § 302(a)(3).

9

310, 316 (1945). Accordingly, both N.Y. C.P.L.R. § 302(a)(1) and (3) provide bases upon which the Court may exercise personal jurisdiction over Defendants.

### B. Substantive Claims

#### 1. New York law applies to Plaintiffs' substantive claims

Before the Court may turn to Defendants' argument that Plaintiff's substantive allegations fail, it must consider whether a choice-of-law analysis is necessary. A federal trial court sitting in diversity must apply the law of the forum state to determine the choice of law. Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001). Here, the forum state is New York, as the case was properly filed in this Court.[6] E.g., GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 382 (2d Cir. 2006). In New York, the first question to resolve in determining whether to undertake a choice-of-law analysis is whether a conflict of laws exists. Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) (citing Matter of Allstate Ins. Co. v. Stolarz, 613 N.E.2d 936, 937 (N.Y. 1993)).

The parties have provided little guidance on this matter; Plaintiffs simply point out that they can "discern no difference between New York law and Georgia law relevant to the outcome of

---

[6] Because the key event giving rise to Plaintiffs' claims occurred here -- namely, the New York Suit -- venue in this district is proper. 28 U.S.C. § 1391(a).

this motion." Pls.' Mem. 16 n.7. The Court's examination confirms that Georgia law governing defamation, malicious prosecution, and IIED is substantively the same as the law of New York. Compare Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999) (listing elements of defamation under New York law) and Martinez v. City of Schenectady, 761 N.E.2d 560, 564 (N.Y. 2001) (listing elements of malicious prosecution under New York law) and Howell v. N.Y. Post Co., Inc., 612 N.E.2d 699, 702 (N.Y. 1993) (listing elements of IIED under New York law) with Mathis v. Cannon, 573 S.E.2d 376, 380 (Ga. 2002) (listing elements of defamation under Georgia law); and McNeely v. Home Depot, Inc., 621 S.E.2d 473, 474-75 (Ga. Ct. App. 2005) (listing elements of malicious prosecution under Georgia law); and Travis Pruitt & Assocs., P.C. v. Hooper, 625 S.E.2d 445, 452 (Ga. Ct. App. 2005) (listing elements of IIED under Georgia law). Given the lack of conflict between Georgia and New York law on these matters, the Court concludes that no choice-of-law analysis is necessary. Curley, 153 F.3d at 12. Accordingly, the Court will apply New York law to Plaintiffs' substantive claims.

> **2. Plaintiffs' defamation claim is time-barred**

Count One of Plaintiffs' Amended Complaint, which alleges that Rawls's letter contained statements that were libelous per se, is time-barred because it was brought more than one year after the cause of action accrued. Under New York law, a cause

of action for defamation accrues on the date of the first publication. N.Y. C.P.L.R. § 215(3); Gelbard v. Bodary, 706 N.Y.S.2d 801, 802 (N.Y. App. Div. 2000). Publication in the libel context occurs when written words are "read by someone other than the person libeled and the person making the charges." Fedrizzi v. Washingtonville Cent. Sch. Dist., 611 N.Y.S.2d 584, 585 (N.Y. App. Div. 1994).

Plaintiffs acknowledge that New York's limitations period for defamation begins on the date of first publication but argue that because the defamatory material was published secretly, it would be unjust to apply it in these circumstances. Pls.' Mem. 21-24. New York law, however, is clear that a cause of action in libel accrues when the statements are originally published, not upon plaintiff's discovery. Teneriello v. Travelers Cos., 641 N.Y.S.2d 482, 483 (N.Y. App. Div. 1996) (holding that plaintiff's cause of action accrued when the statements were first published, not when plaintiff discovered them two years later).[7]

Plaintiffs' defamation claim is dismissed as time-barred because it was filed long after the limitations period expired.

---

[7] No New York court has held that a cause of action for defamation accrues when a plaintiff discovers the statement; in fact, most authority cuts sharply against such a rule. E.g., Teneriello, 641 N.Y.S.2d at 483 ("[T]he action accrued when the statements were originally published . . . not upon plaintiff's discovery of the statements two years later."); Fleischer v. Inst. for Research in Hypnosis, 394 N.Y.S.2d 1, 1 (N.Y. App. Div. 1977) ("The statute of limitations of one year . . . applies, and the fact that the libel may not have been discovered until later matters not, for the cause of action accrues on the date of publication.").

### 3. Plaintiffs have failed to state a claim for malicious prosecution

Plaintiffs' malicious prosecution claim fails because they have alleged no facts to support a conclusion that Defendants commenced a criminal proceeding against them.  Because Plaintiffs have stated no legally cognizable claim for malicious prosecution, their response that they have satisfied Rule 8 of the Federal Rules of Civil Procedure is unavailing.

"To establish malicious prosecution under New York law, the plaintiff must show (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice." Anderson v. County of Nassau, 297 F. Supp. 2d 540, 546 (E.D.N.Y. 2004); see also O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996); Cantalino v. Danner, 754 N.E.2d 164, 166-67 (N.Y. 2001).  To fall within these parameters, a person must play an "'active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" Rothstein v. Carriere, 373 F.3d 275, 293-94 (2d Cir. 2004) (citing Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 217 (2d Cir. 2000).  "[A] civilian defendant who merely furnishes information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed will not be held liable

for malicious prosecution." Lupski v. County of Nassau, 822 N.Y.S.2d 112, 113 (N.Y. App. Div. 2006). For liability to attach, "'it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" Id. (citations omitted).

Here, Plaintiffs allege that Defendants provided information not to French authorities, but to a third-party, who then contacted authorities. In these unusual circumstances, Plaintiffs must allege facts suggesting either that Defendants exerted so much influence over the third-party that the third-party was not exercising independent judgment in contacting authorities or that Defendants and the third-party worked in concert to instigate the prosecution. Id. (citing (Mesiti v. Wegman, 763 N.Y.S.2d 67, 69-79 (App. Div. 2003). Nothing in the Rawls letter can be read to suggest that Hanly be prosecuted; it is instead written to aid the French attorney in defending his clients in the French Copyright Case. Am. Comp. Exh. A, at 8, 10. Regardless of Plaintiffs' summary assertion that Defendants instigated the prosecution, no facts suggest that Defendants have engaged in any conduct that could constitute an "active role" in Hanly's prosecution. Plaintiffs' malicious prosecution claim is dismissed with prejudice.

### 4. Defendants' alleged wrongdoing does not rise to the level of IIED

Although Plaintiffs' IIED claim is timely[8] and not duplicative of their defamation claim,[9] it fails to state a claim upon which relief may be granted. Plaintiffs argue that Defendants, by inciting the French Criminal Investigation, engaged in outrageous conduct and caused Hanly "severe" and "extreme" emotional distress, including sleepless nights. These

---

[8] Plaintiffs' IIED claim is timely because it was brought within a year of the date that the claim accrued. N.Y. C.P.L.R. § 215(3); Demas v. Levitsky, 738 N.Y.S.2d 402, 408 (N.Y. App. Div. 2002); Campbell v. Chabot, 592 N.Y.S.2d 423, 424 (N.Y. App. Div. 1993); Snyder v. Town Insulation, Inc., 81 N.Y.2d 429, 433, 599 N.Y.S.2d 515, 517 (1993) ("A cause of action sounding in tort "does not accrue until an injury is sustained."). Hanly alleges that Defendants engaged in conduct designed to inflict emotional distress beginning in 2000 (when they published the defamatory letter), which culminated in 2004 (when the French magistrate notified him that he was under investigation and needed to answer charges in France). Because the injury was fully inflicted only when the magistrate informed Hanly of the investigation, the claim accrued on that date -- November 2004. Hanly thus had until November 2005 to file his IIED claim. Given that Hanly filed this action on May 27, 2005, the IIED claim is timely.

[9] Because Plaintiffs' IIED claim alleges an injury distinct from the defamation injury, the IIED claim does not impermissibly duplicate the defamation claim. IIED claims are, in general, "[p]recluded where the offending conduct is embraced by a traditional tort remedy." McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 682 N.Y.S.2d 167, 169 (N.Y. App. Div. 1998). Although the two injuries are related to one another in that they are rooted in the same conduct -- the sending of the Rawls letter -- the injuries are different. In the defamation claim, Plaintiffs allege that they suffered harm when falsehoods impugning Hanly's integrity were published. In the IIED claim, Plaintiffs allege that Hanly suffered emotional harm when the French magistrate informed him that he was under investigation. Because the injuries are different, the defamation claim does not fully embrace the IIED claim. Plaintiffs' IIED claim therefore is not duplicative of the defamation claim.

conclusory allegations are insufficient to sustain an IIED claim because Plaintiffs have not pled facts outrageous enough to constitute severe emotional distress nor to support an allegation that Defendants intended to cause such distress.

To state a claim for IIED under New York law, a plaintiff must allege: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Howell, 612 N.E.2d at 702.  New York courts require a plaintiff to "allege conduct that [is] 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.'"  Hart v. Child's Nursing Home Co., Inc., 749 N.Y.S.2d 297 (N.Y. App. Div. 2002) (citing Doe v. Community Health Plan-Kaiser Corp., 709 N.Y.S.2d 215, 218 (N.Y. App. 2000); Cavanaugh v. Doherty, 675 N.Y.S.2d 143, 150 (N.Y. App. Div. 1998)); Stuto v. Fleischman, 164 F.3d 820, 827 (2d Cir. 1999). Recovery for IIED is available "only where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation."  Owen v. Leventritt, 571 N.Y.S.2d 25, 25 (N.Y. App. Div. 1991) (citation and internal quotations omitted)).

This standard is high, and New York courts routinely dismiss IIED claims involving far more egregious conduct than that at

16

issue here.[10]  E.g., Burlew v. Am. Mut. Ins. Co., 472 N.E.2d 682, 685 (N.Y. 1984) (affirming dismissal of IIED claim where employer intentionally delayed authorizing necessary surgery for five months); Murphy v. Am. Home Prods. Corp., 448 N.E.2d 86, 86, (N.Y. 1983) (affirming dismissal of IIED claim where plaintiff was transferred and demoted for reporting fraud, coerced to leave by being told that he would never be allowed to advance, discharged and ordered to leave immediately after reporting other alleged in-house illegal conduct, and then forcibly and publicly escorted from the building by guards when he returned the next day to pick up his belongings); Leibowitz v. Bank Leumi Trust Co. of N.Y., 548 N.Y.S.2d 513, 514 (N.Y. App. Div. 1989) (affirming dismissal of IIED claim where plaintiff alleged she was frequently the subject of derogatory, racist remarks).

Even assuming Plaintiffs could show that Hanly suffered severe emotional distress, they cannot establish that Defendants intended to inflict such distress.  Plaintiffs' argument is based

---

[10] In Stuto v. Fleishman, 164 F.3d 820 (2d Cir. 1999), the Second Circuit noted that New York courts have sustained IIED claims in cases that "involved some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy."  164 F.3d at 828 (collecting cases).  This principle does not help Plaintiffs, because, even if the letter contains a false accusation of criminal or heinous conduct, Plaintiffs have alleged nothing more.  That is, the combination of factors is absent.  See, e.g., Sullivan v. Bd. of Educ., 517 N.Y.S.2d 197, 1999 (N.Y. App. Div. 1987) (concluding plaintiff stated a cause of action for IIED in a case involving a threat of falsified charges used to coerce the resignation of a tenured professor).

on the contention that Defendants incited a criminal action with the intention of inflicting emotional distress. Plaintiffs, however, cannot establish that Defendants, via the Rawls letter, incited a criminal action against Hanly. Plaintiffs' IIED claim is therefore dismissed with prejudice.

## IV. Conclusion

For the reasons stated above, the Court grants Defendants' Motion to Dismiss. The Clerk of Court is directed to close this case. Any pending motions are moot.

SO ORDERED.

Dated:   New York, New York
         March **5**, 2007

                                    _____
                                    Kimba M. Wood
                                    United States District Judge